IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON LEE,                                    CASE NO. 2:13-cv-0761

               Petitioner,              JUDGE MICHAEL H. WATSON

v.                                            Magistrate Judge Kemp

WARDEN, NOBLE CORRECTIONAL
         INSTITUTION,

         Respondent.

## REPORT AND RECOMMENDATION AND ORDER

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court to conduct an initial screening under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. That Rule provides that "[i]f it plainly appears from the petition ... that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition ...." For the reasons that follow, the Magistrate Judge will give petitioner the opportunity to withdraw his unexhausted claims, failing which his petition should be **DISMISSED** under Rule 4.

## I.  THE FACTS

The facts of this case are, as it turns out, not particularly relevant to the procedural issues which appear from the petition - particularly petitioner's admission that some of his claims were never presented to the Ohio courts at all, and that none of them were ever presented to the Ohio Supreme Court. Nevertheless, a brief recitation

of the facts, taken from the Fifth District Court of Appeals' opinion, helps to place

petitioner's claims in context.

The Fifth District Court of Appeals summarized the facts in this way:

{¶ 2} On September 23, 2010, officers from the Licking County Sheriff's Department went to appellant's home at 9151 Linville Road, Newark, Ohio, to serve a writ of possession. Deputies spoke to appellant and explained that his property had been sold at sheriff's sale and he needed to make arrangements to vacate. They agreed on October 11, 2010 as the date by which appellant would vacate, but appellant stated that he was going to hire an attorney to have the sale set aside.

{¶ 3} Deputies did not return on October 11, 2010, because a court action was pending to review the propriety of the sale. However, on October 20, 2010, the court denied a stay on the writ of possession. Deputies again spoke with appellant at his home on October 25, 2010, and told him he needed to vacate on October 27, 2010.

{¶ 4} At about 9:30 a.m. on October 27, deputies arrived at appellant's home. Appellant was standing on the front sidewalk. He yelled something to the officers about having sold his house to someone else and told them to leave. Appellant then ran in the front door of the home. Officers followed appellant to the front porch but appellant would not come out or let them in the house. He yelled through the front door that he was not coming out.

{¶ 5} Deputies returned to their vehicle to telephone the buyers to inform them not to come to the property that morning as planned. They called appellant's attorney, and also called their supervisor, Captain Bruce Myers. Deputy Tim Caldwell went around to the back door to attempt to talk to appellant. The blinds covering the French doors on the back porch flew open and the faces of appellant and another man, later identified as Karl Weatherby, appeared against the window. The two men began yelling and screaming at Dep. Caldwell. The corners of their mouths were "full of white stuff" from yelling and screaming and they were spitting on the window.

{¶ 6} When Captain Bruce Myers arrived, he went to the back door to speak with appellant. He advised appellant through the door that

2

appellant's attorney was on his way. Capt. Myers saw an arm and a hand come around the side of the blinds covering the door. The hand was holding a pistol.

{¶ 7} Much of the staff of the Sheriff's Department had been dispatched to an incident involving a van, containing a pipe bomb, which crashed into a church following a pursuit earlier that morning. At least 25 employees of the Sheriff's Department and fire department were dispatched to appellant's home, including the SWAT team and the hostage negotiating team.

{¶ 8} Appellant would not speak to the hostage negotiators through a "throw phone," which is the preferred method of communicating so that all communications can be monitored by the police. However, he agreed to speak to Misty VanBalen through a cell phone. VanBalen faxed the paperwork concerning the sale of the house to appellant so they both had all the relevant court papers. Appellant repeatedly told her that he wanted to die, that he was going to kill whoever entered the residence first and then kill himself. He also told her that he and Weatherby had a plan to kill each other. He told her that he could see the officers through the window and could take them out. He intended to die and take out as many people as he could. Appellant would speak calmly with her for awhile, then start yelling and hang up. He told her that he had shown a gun to an officer and knew he was in trouble, he still had the gun, and he wasn't going to put it down. He told her he had other guns in the house, including rifles which Weatherby knew how to handle because he had been in the military. He said that he wanted the media to be there when he died.

{¶ 9} At about 4:15 p.m., Weatherby agreed to come out unarmed and speak to the media. Appellant and Weatherby were both concerned about how their cats were going to get fed if they surrendered. VanBalen agreed to feed the cats. Appellant came out of the house at 6:30 p.m.

{¶ 10} During a subsequent search of the house, officers found marijuana. They also found three firearms in a cabinet in a basement office, a loaded firearm in a garage, a revolver in the first floor dining room, a rifle leaning against an end table in the living room, and a rifle in the corner of a first floor bathroom.

{¶ 11} Appellant admitted to police that he grabbed a firearm and went to the back door. He did not deny brandishing a weapon at Captain Myers

3

and indicated that he had a weapon with him. He also admitted that he planned to shoot the first person through the door and then shoot himself.

{¶ 12} Appellant was indicted by the Licking County Grand Jury with obstructing official business, inducing panic, aggravated menacing, possession of criminal tools, possession of marijuana, and two firearm specifications. The first firearm specification, applicable to counts one and two, alleged that appellant had one or more firearms on or about his person or under his control or that of an accomplice. The second firearm specification, also applicable to counts one and two, alleged that appellant or an accomplice displayed, brandished, indicated that they possessed a firearm or used it to facilitate the offense.

*State v. Lee*, 2012 WL 2393770 (Licking Co. App. June 22, 2012).

## II.  PROCEDURAL HISTORY

According to the petition, after being convicted by a jury, petitioner was sentenced in the Licking County Court of Common Pleas on July 11, 2011. He received an aggregate sentence of three and one-half years on charges of obstructing official business, aggravated menacing, possession of marijuana, and a firearm specification. *See Petition*, Doc. 3, at 1.

Petitioner states in his petition that he appealed his conviction to the Court of Appeals for the Fifth Appellate District, raising these claims: (1) the firearm specification finding was against the manifest weight of the evidence; (2) the sentencing entry was defective regarding the firearm specification; and (3) the trial court improperly admitted cumulative evidence of the firearm specification and improperly excluded evidence of petitioner's mental state.

On June 22, 2102, the court of appeals affirmed in part and reversed in part the

4

trial court's decision, finding that the trial court erred in its sentencing entry by stating that the jury had found petitioner guilty on the firearm specification as it related to both the first and second counts of the indictment. In fact, petitioner was acquitted on the second count, a charge of inducing panic. The court of appeals found the error harmless, but remanded the case to the trial court "for the limited purpose of correcting the judgment to remove the reference to a firearm specification on Count Two, on which appellant was acquitted." *State v. Lee*, *supra*, at *7. The other assignments of error were overruled. Petitioner did not take an appeal to the Ohio Supreme Court, nor did he file any post-conviction petition in the trial court.

In his federal habeas corpus petition, which was signed on July 25, 2013 and filed on August 5, 2013, petitioner asserts the following grounds for relief, stated here exactly as they appear in the petition:

> **GROUND ONE**: Prosecutorial misconduct in presenting erroneous information to the Jury and leading witnesses to testify falsely prejudiced Petitioner to the effect of a miscarriage of justice.

> **Supporting facts**: At Petitioner's trial, the prosecutor led Deputy Caldwell to change his original testimony. On cross examination Deputy Caldwell changed his testimony back to his original account. Prosecutor allowed Jury to believe that petitioner's home was sold before the day in question when in fact is was sold almost one month after.

> **GROUND TWO**: Petitioner was prejudicially denied the effective assistance of counsel contrary to the State and Federal Constitutions.

> **Supporting facts**: Petitioner was denied effective assistance of counsel from his defense and appellate counsels. Both failed to raise Ohio State laws on privilege and State and Federal Constitutional at trial and direct appeal. Their performance was below objectively reasonable

standards of professional conduct, and these counsels deficient performance prejudiced Petitioner to the effect of a miscarriage of justice.

**GROUND THREE**: Petitioner's actions were privileged under Ohio law and the State and Federal Constitutions and thus could not be the basis for criminal liability.

**Supporting facts**: The offenses require proof beyond a reasonable doubt that deputies were acting under color of law.  Petitioner was the legal owner of the property.  There was no proof that the deputies had a right to be there.  The deputies used excessive and unnecassary force when they broke the front door and armed themselves with M-16 assault rifles prior to petitioner arming himself.  Petitioner had a right to repel armed trespassers by threat who were threatening to invade his home with deadly weapons.

**GROUND FOUR**:   Judicial misconduct deprived petitioner of impartial judicial trial and direct appeal proceedings, denying him of due process and equal protection of law, with prejudice toward petitioner to the effect of a miscarriage of justice.

**Supporting facts**: Both trial and appeals court ignored Ohio State and Federal law and ignored petitioner's Ohio State and Federal Constitutional rights by doing nothing about the crimes that was committed against him.

**GROUND FIVE**: The jury instructions were prejudicially insufficient contrary to Ohio law and State and Federal Constitutions prejudiced Petitioner to the effect of a miscarriage of justice.

**Supporting facts**: Trial court did not instruct the jury of all the issues by the facts at the petitioner's trial.  There was no jury instructions on privilege, or the defense of self-defense by way of threat.  The violations of petitioner's federal rights was motivated by malice and not caused by mere inadvertence or poor judgment.  Indictment violations occurred by charging Petitioner with offenses that were prejudicial to the effect of a miscarriage of justice, and denied Petitioner of fundamental fairness, due process, and equal protection of the law.

**GROUND SIX**: The withholding of evidence and witnesses from the jury prejudiced the Petitioner to the effect of a miscarriage of justice.

6

**Supporting facts**: Petitioner had a contract with his neighbor to purchase Petitioner's home.  Neighbor reneged on the contract and claimed he bought the Petitioner's home at the sheriff's auction.  Three weeks later, Petitioner received a journal entry (signed by a Judge) confirming the sale and verbally told by a sheriff lieutenant from the civil division that his home was sold at the auction.  Petitioner contacted a attorney who informed him that the alleged buyer (neighbor) only put 10% down of the starting bid.  Sheriff officers remove Petitioner from his home by force on 10/27/10 so neighbors could have his home appraised by a bank to pay the balance on 11/22/10.  This evidence was not allowed to be presented to the jury.

*Petition*, at 6-12b.  Petitioner admits that he did not appeal from the state appellate court's decision, and that he did not file any other motions with the state court attacking his convictions, such as a post-conviction motion with the trial court or a Rule 26(B) motion to reopen his appeal.  The significance of petitioner's failure to pursue any appeals or remedies beyond his first direct appeal will be discussed in the next section of this Report and Recommendation.

### III.  EXHAUSTION AND PROCEDURAL DEFAULT

Two of the more basic principles in habeas corpus law are the requirements that a state prisoner fairly present all of his federal constitutional claims to the state courts, and that the failure to do so prevents a federal court from ruling on the merits of those claims.  That is, in order for a federal court to decide any such claims on their merits, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999).

7

That is so because §2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's position "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State ...." Section 2254(c) expands on that requirement, stating that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

The first step in this analysis is to determine how, if at all, Ohio law allows claims such as the ones petitioner is making to be presented to the Ohio courts. Four basic rules come into play here. First, claims which appear on the face of the record must be presented by way of direct appeal; if not, *res judicata* bars them from being raised in any other type of proceeding. *State v. Ishmail*, 67 Ohio St. 2d 16 (1981). An exception to this rule exists when an appellant is represented on appeal by the same attorney who tried the case; that attorney need not raise claims of his or her own ineffectiveness even if those claims appear on the face of the record, and such claims are properly raised in a post-conviction proceeding under Ohio Rev.Code §2953.21. *See State v. Lentz*, 70 Ohio St. 3d 527, 530 (1994)("*res judicata* does not apply when trial and appellate counsel are the same, due to the lawyer's inherent conflict of interest").

Second, although a direct appeal from an Ohio appellate court decision must be taken to the Ohio Supreme Court within 45 days, Ohio allows a party

8

who fails to meet that time limit to move for leave to file a delayed direct appeal. *See* Ohio S. Ct. Prac. Rule 7.01(A)(4) (a) ("In a felony case, when the time has expired for filing a notice of appeal in the Supreme Court, the appellant may file a delayed appeal by filing a notice of appeal and a motion for delayed appeal..."). Such a motion must be accompanied by an explanation of "the reasons for the delay."   Ohio S. Ct. Prac. Rule 7.01(A)(4) (a) (I).  If the Supreme Court were to grant a motion for delayed direct appeal, however, it would consider only those issues raised in the court of appeals.  *See Fornash v. Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *citing, inter alia, State v. Phillips*, 27 Ohio St. 2d 294 (1971); *see also Tanner v. Wolfe*, , 2006 WL 3452414 (S.D. Ohio Nov. 29, 2006)("the Ohio Supreme Court does not ordinarily consider claims not raised in the Court of Appeals below").

Third, Ohio allows claims that do not appear from the face of the record to be raised in a post-conviction proceeding filed under Ohio Rev. Code §2953.21. That is because such claims, relying on evidence outside the record, cannot be raised on direct appeal, which is limited to claims appearing from the trial court record.  *See, e.g., State v. Perry*, 10 Ohio St. 2d 175 (1967); *see also State v. Smith*, 125 Ohio App. 3d 342, 348 (Butler Co. App. 1997)(in the context of a post-conviction petition, "[t]he presentation of competent, relevant, and material evidence outside the record may defeat the application of *res judicata*").  And, as noted above, a post-conviction petition may also properly raise claims of ineffective

assistance of counsel that appear on the face of the record if the defendant was represented by the same attorney at the trial and appellate levels.

Finally, Ohio permits defendants to claim that their appellate attorneys were ineffective. The procedure for raising this kind of claim is a motion to reopen the direct appeal, filed with the state court of appeals under Ohio App. R. 26(B). *State v. Murhahan*, 63 Ohio St. 3d 60 (1992). Such a motion is ordinarily due within 90 days from journalization of the court of appeals' decision "unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)((1).

In this case, it appears from the docket of the Licking County Court of Common Pleas that new counsel, Robert Bannerman, was appointed to represent petitioner on appeal. Consequently, the Court will analyze the procedural aspects of petitioner's six grounds for relief with that fact in mind.

## A. <u>Available State Court Remedies</u>

Ground one, prosecutorial misconduct, is a claim that appears from the face of the record. It was not raised as part of petitioner's direct appeal. It would not appear that petitioner has any remedy available in state court in which to raise this claim now.

Ground two, which alleges ineffective assistance of both trial and appellate counsel, focuses on the failure to raise a defense of privilege - presumably the privilege to defend one's property by means of force. Trial counsel's failure to raise this issue would appear on the face of the record, and

10

should have been (but was not) raised on direct appeal. No further remedy exists as to this claim. The claim of ineffective assistance of appellate counsel is one which could have been timely raised in a Rule 26(B) motion to reopen the appeal; now, it can only be raised by a motion for delayed reopening.

Ground three, the assertion that petitioner's actions were privileged under state and federal law, appears to attack the sufficiency of the evidence as to the sheriff's deputies right to be on his property, as well as a claim that petitioner had a lawful right to repel them. These matters would also be evident from the face of the record, and, because they were not included as assignments of error on appeal, they cannot now be raised in any Ohio court.

Ground four alleges judicial misconduct. The claim, as stated, does not appear to rely on matters outside the record, and, like grounds one and three, was not raised on direct appeal. Again, petitioner has no currently available state remedy in which to assert this claim.

Ground five attacks the sufficiency of the jury instructions. It, too, is a claim appearing on the face of the record which was not raised on appeal. Procedurally, it is in the same posture as grounds one, three, and four.

Finally, ground six deals with the withholding of allegedly exculpatory evidence from the jury. This was one of the claims which petitioner raised on direct appeal. He would still be able to assert this claim in a motion for delayed direct appeal filed with the Ohio Supreme Court.

From this discussion, the Court concludes that petitioner still has available (though untimely) remedies with respect to a portion of ground two, and for ground six. The remainder of his claims cannot be raised in any available state court proceeding.

### B. Exhaustion of Available Remedies

As noted above, before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir.1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990). Where alternative state remedies are available to consider the same claim, however, exhaustion of one of these remedies is all that is necessary. A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n. 3 (6th Cir.1987).

When state court remedies are currently available, and there is no question of the petitioner's ability to pursue them timely, the Court's disposition

of a habeas petition containing unexhausted claims is straightforward. If all of the claims are unexhausted, the Court simply dismisses the petition without prejudice to the petitioner's ability to refile the case once the state court proceedings have been completed. That, however, is not this case. Only some of petitioner's claims are unexhausted in the sense that a state remedy for those claims is theoretically available. The remainder were not fully pursued through the state court system and, specifically, were never presented to the Ohio Supreme Court, as is required for complete exhaustion. They cannot now be raised in the Ohio courts and are, absent some valid excuse for not raising them, procedurally defaulted. Thus, the petition in this case is what is referred to as a "mixed petition" containing both exhausted and unexhausted claims.

In 1982, in *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court considered the question of how to handle mixed petitions. In *Rose*, the Supreme Court decided that the proper course of action was to dismiss the entire petition. That way, the petitioner could pursue relief from the state courts as to the unexhausted claims; if he or she were unsuccessful, the entire case could then be refiled in federal court. Under the law as it existed in 1982, a petitioner would not suffer any prejudice from such a dismissal because there was no statute of limitations in place which would prevent the petitioner properly refiling his habeas petition.

That scenario changed with the adoption of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA). Now, with a one-year statute of limitations applicable to actions filed under §2254, there is a real possibility that if an entire mixed petition is dismissed, the petitioner will not be able to bring his already-exhausted claims back to federal court after exhausting the unexhausted claims, since the statute of limitations may have run before the petition can be refiled.

The Supreme Court addressed this situation in *Rhines v. Weber*, 544 U.S. 269 (2005). In *Rhines*, the petitioner asked the district court to stay consideration of the exhausted claims pending his return to state court; otherwise, if all of his claims were dismissed, the exhausted claims would be time-barred when refiled. The Supreme Court recognized the usefulness of following such a procedure (referred to as "stay and abeyance") in some cases, but limited its use to certain situations. The Court was concerned that if stay and abeyance became routine, it would undermine the AEDPA's twin goals of encouraging state defendants promptly to exhaust their available state court remedies and reducing the delay in processing federal habeas corpus petitions. The Court therefore held that "stay and abeyance should be available only in limited circumstances," and those circumstances existed only "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted

14

claims are plainly meritless." *Rhines v. Weber*, 544 U.S. at 277. Consequently, if there is no basis to apply the "stay and abeyance" procedure in any particular case, this Court must still dismiss a mixed petition in its entirety.

The first thing a petitioner must show in order to qualify for stay and abeyance is that good cause existed for the petitioner's failure to have presented his unexhausted claims to the state courts. Here, the unexhausted claims are that portion of ground two relating to ineffective assistance of appellate counsel and claim six, which was raised on appeal but not pursued at the Ohio Supreme Court level. To some extent, the petition addresses petitioner's reasons for failing to exhaust these claims. The Court must, under *Rhines*, decide if these reasons rise to the level of good cause.

The Court looks first to petitioner's reasons for not presenting his sixth ground for relief to the Ohio Supreme Court. In explaining why he did not appeal the decision of the Fifth Appellate District Court of Appeals, petitioner states: "Ohio public defender office refused to provide counsel and led Petitioner to believe it would be a waste of time. (See letter). There was no indication that the court was prepared to depart from its former course of decisions." *Petition*, Doc. 3, at 6. The letter to which petitioner refers to is attached to his petition. It was written by Katherine A. Szudy, an assistant state public defender, and is dated November 14, 2012, well after the 45-day period for filing a timely appeal to the Ohio Supreme Court had expired. In her letter, Attorney Szudy explained

15

to petitioner that (1) in order for the Public Defender's Office to pursue a delayed direct appeal, it had to be convinced that there was a valid reason for not taking a timely appeal and that the underlying issues for appeal had merit; (2) that the Ohio Supreme Court rarely, if ever, reviewed claims that a verdict was against the manifest weight of the evidence; (3) that even if there was merit in petitioner's claim of admission of inadmissible evidence, "a case involving error correction generally does not meet [the] jurisdictional requirement" that the case "be 'of public or great or general interest'"; and (4) that if petitioner wanted to file a delayed direct appeal, he would have to do so himself. She sent him a packet of information to assist him in doing so and provided him with the proper address for his motion.

This letter, by itself, does not speak at all to petitioner's failure to have taken a timely direct appeal to the Ohio Supreme Court. He does not directly argue that his reason was the failure of the State of Ohio to provide him with counsel at that stage of the case, but such an argument would be unavailing; an Ohio defendant has no constitutional right to counsel for any post-conviction proceeding beyond the first appeal. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *cf. Smith v. State of Ohio Dept. of Rehabilitation and Correction*, 463 F.3d 426 (6th Cir. 2006). That also forecloses any argument that the Public Defender's refusal to represent petitioner on a delayed appeal excused his failure to pursue that remedy.

To the extent that petitioner relies on Ms. Szudy's letter as advising him that the chances of success on his delayed appeal were slight, that is also not good cause for failing to seek that court's review.  A very similar situation was considered by the Court of Appeals in *Ortiz v. Wolfe,* 466 Fed. Appx. 465 (6th Cir. March 1, 2012), which was an appeal from a decision of this Court.  In *Ortiz*, this Court dismissed a mixed petition as unexhausted, and refused to stay the case, finding that petitioner had not shown good cause for his failure to exhaust state court remedies - particularly a delayed direct appeal.  Petitioner Ortiz, like petitioner here, argued on appeal that he had shown good cause for that failure because "a delayed direct appeal would be futile ...."  *Id*. at 467.  The Court of Appeals rejected his argument, noting that although "Ortiz may only have a slim chance of success on direct appeal ... an improbable argument is not automatically futile" and that a petitioner in his situation "must at least give Ohio's courts a chance to decide an appeal before declaring it an exercise in futility." *Id*.  The Court of Appeals therefore affirmed the dismissal of the petition on exhaustion grounds.

This case is no different.  Whether or not the Ohio Supreme Court would have entertained a direct appeal from the Fifth District Court of Appeals had one been timely filed, or whether it would do so now, petitioner had an obligation to seek review of his claims in order to satisfy §2254's exhaustion requirement.  To allow him, or any petitioner, to avoid that requirement by claiming that such

17

review was unlikely to happen would be to undercut the very purpose of the exhaustion requirement, which is to give the state courts a full and fair opportunity to correct their own errors before a federal court considers whether a state conviction should be overturned.  As the Supreme Court said in *Rhines v. Weber, supra*, at 273, "the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." Consequently, petitioner has not shown good cause for his failure to present ground six to the state courts.

The other unexhausted claim is that portion of ground two which raises ineffective assistance of appellate counsel.  Nothing in the petition speaks to the question of why petitioner never filed a motion to reopen with the Fifth District Court of Appeals.  The Court therefore concludes that he has not shown good cause for his failure to exhaust that claim.  Absent a showing of good cause on either claim, *Rhines* forbids the Court from using the stay and abeyance procedure here.  That is, the Court may not stay this case, allow petitioner to seek review of his unexhausted claims in the Ohio courts, permit him to return to Court once he has done so, and then to decide the merits of all of his claims.

Here are the Court's (and petitioner's) choices.  Because stay and abeyance is not available, the Court must (1) "dismiss the mixed petition in its entirety"; (2) "permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims"; or (3) "ignore the exhaustion requirement and *deny* the

18

petition on the merits if *none* of the petitioner's claims has any merit ...." *Harris v. Lafler*, 583 F.3d 1028, 1031-32 (6th Cir. 2009).  Ordinarily, the Court will not simply dismiss a mixed petition without giving petitioner the chance to withdraw his unexhausted claims and to proceed on the remaining claims, so the real question is whether the Court should afford petitioner that opportunity or simply deny the petition on its merits.  By law, it can do so only if all of the claims - both exhausted and unexhausted - plainly lack merit.

Here, the exhausted claims all appear to have been procedurally defaulted.  No Ohio court would consider those claims now because they were required to have been raised on direct appeal but were not.  As noted above, under *State v. Perry*, 10 Ohio St. 2d 175 (1967), *res judicata* would bar further consideration of those claims in the state courts.  If that is so, a federal court cannot decide any of them on their merits.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (holding that where a habeas petitioner fails to follow a valid state procedural rule dealing with the presentation of claims to the state courts, and that rule is regularly enforced, a federal court cannot hear the claims absent a showing "that there was 'cause' for [the petitioner] to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error"). The petition is silent as to the reasons why these claims were never raised in petitioner's direct appeal apart from his claim of ineffective assistance of appellate counsel, and because he never argued ineffective assistance of

appellate counsel to the state courts, he cannot rely on that argument as cause to excuse his procedural default. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986)("a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"). On the current state of the record, then, all of the exhausted claims would appear plainly to lack merit.

The unexhausted claims assert ineffective assistance of appellate counsel and trial court error in the exclusion of exculpatory evidence. On their face, these claims are not "plainly meritless." *Rhines, supra,* at 277. The Ohio courts should therefore be given a chance to consider whatever explanation petitioner has to offer as to why his requests for review are untimely, and to decide the merits of the claims if they so choose. If those courts deny relief, petitioner may or may not be able to seek federal court review; as the court in *Gonzalez v. Kernan*, 2008 WL 4838466, *6 (C.D. Cal. Apr. 18, 2008) observed, "[i]f Petitioner exhausts the unexhausted claims following the conclusion of this action and wishes to return to federal court, any future federal habeas petition by Petitioner addressing the same conviction may be precluded as successive under 28 U.S.C. § 2244(a)-(b), or as untimely by the statute of limitations in 28 U.S.C. § 2244(d)(1)." Nevertheless, that is a situation created by petitioner's choice not to exhaust all of his claims in state court before filing a habeas corpus petition here, and one which this Court can do nothing about since the stay and abeyance procedure described in *Rhines*

20

*v. Weber* is not available to petitioner.

## IV.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **ORDERS** petitioner to advise the Court within twenty-one days if he wishes to withdraw his unexhausted claims from the petition.  If he chooses not to do so, the Court **RECOMMENDS** that the petition be dismissed as a mixed petition containing both exhausted and unexhausted claims.  If petitioner does withdraw the unexhausted claims, he shall also, if he wishes to oppose dismissal of the remainder of his claims on grounds of procedural default, address the issues of cause for not raising those claims in the Ohio courts, and prejudice from that failure.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge

with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge

22